UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN T. LAFFOON, )
) CASE NO. C10-1887-MJP
         Plaintiff, )
)
  v. ) REPORT AND RECOMMENDATION
)
MICHAEL J. ASTRUE, Commissioner of )
Social Security, )
)
         Defendant. )
_____ )

Plaintiff Steven T. Laffoon appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1969 and was 40 years old at the time of the hearing before the ALJ. (Administrative Record ("AR") at 124.) He has a high school education and training in

telephony. (AR 149.) His past work experience includes employment as a project manager, design engineer, and maintenance supervisor. (AR 167.) Plaintiff asserts that he is disabled due to affective disorder, anxiety related disorder, and alcohol dependence. (AR 21, 142.) He asserts an onset date of November 1, 2007. (AR 21.)

The Commissioner denied plaintiff's claim initially and on reconsideration. (AR 68-69.) Plaintiff requested a hearing before an ALJ which took place on February 2, 2010. (AR 81-82, 32-67.) The ALJ heard testimony from plaintiff, and vocational expert Brian S. Sorenson. (AR 32-67.) On April 1, 2010, the ALJ issued a decision finding plaintiff not disabled. (AR 18-27.)

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council (AR 1-3), making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On November 18, 2010, plaintiff timely filed the present action challenging the Commissioner's decision. (Dkt. 1.)

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether a claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since November 1, 2007, the alleged onset date. (AR 20.) At step two, it must be determined whether a claimant suffers from a severe

impairment. The ALJ found plaintiff had the following severe impairments: affective disorder, anxiety related disorder, and alcohol dependence. (AR 21.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found when the effects of plaintiff's alcohol use are considered the severity of plaintiff's impairments meets sections 12.04, 12.06, and 12.09. (AR 21-22.)

The ALJ then considered plaintiff's claim without consideration of his alcohol use. The ALJ found if plaintiff stopped his alcohol use, he would continue to have a severe impairment or combination of impairments. (AR 22.) The ALJ found if plaintiff stopped his alcohol use, he would not have an impairment or combination of impairments that met or equaled a listing. *Id*. If the claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found if plaintiff stopped his alcohol use, he would have the RFC to perform work at all exertional levels involving simple, routine tasks with occasional public contact. (AR 23.) The ALJ found if plaintiff stopped his alcohol use, he would be unable to perform his past relevant work. (AR 25.) If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999). The ALJ found if plaintiff stopped his alcohol use, there would be a significant number of jobs in the national economy that he could perform. (AR 25.)

01  The ALJ concluded that plaintiff's substance use disorder was a contributing factor
02  material to the determination of disability, and that he was not disabled within the meaning of
03  the Act at any time from the alleged onset date through the date of the decision. (AR 26.)

04  Plaintiff argues that the ALJ erred in (1) finding his alcohol use was a material factor,
05  (2) evaluating the medical opinion evidence, (3) evaluating his credibility, (4) evaluating his
06  RFC, and (5) failing to include all of his limitations in a hypothetical to the vocational expert.[1]
07  (Dkt. No. 17.) Plaintiff also argues that the Appeals Council erred by failing to remand his
08  case based on new evidence submitted to the Appeals Council but not reviewed by the ALJ.
09  *Id*. He requests remand for an award of benefits, or, alternatively, further administrative
10  proceedings. *Id*. at 22. The Commissioner argues that the ALJ's decision is supported by
11  substantial evidence and should be affirmed. (Dkt. No. 18.) For the reasons described below,
12  the Court agrees with plaintiff.

13  A. <u>Drug Abuse and Alcoholism Materiality</u>

14  A social security claimant is not entitled to benefits "if alcoholism or drug addiction
15  would . . . be a contributing factor material to the Commissioner's determination that the
16  individual is disabled." 42 U.S.C. § 423(d)(2)(C). Therefore, where relevant, an ALJ must

---

[1] Plaintiff's opening brief contains a lengthy (over twelve pages) recitation of evidence. Plaintiff's counsel is reminded that such recitation is unnecessary and, in fact, discouraged. (*See* Dkt. No. 12 at 2.) Rather, a discussion of the relevant facts and portions of the administrative record should be conducted in the context of specific assignments of error. In addition, plaintiff's counsel is reminded to abide by the formatting requirements outlined in Local Rule CR 10. *See id*. In particular, "[t]he text of any typed or printed brief must be 12 point or larger and must . . . be <u>double spaced</u>." Local Rule CR 10(e) (emphasis added). Pleadings which fail to comply with any provision of the Court's Local Rules may result in the pleading being stricken without further notice.

conduct a drug abuse and alcoholism ("DAA") analysis and determine whether a claimant's disabling limitations remain absent the use of drugs or alcohol. 20 C.F.R. §§ 404.1535, 416.935. That is, the ALJ must first identify disability under the five-step procedure and then conduct a DAA analysis to determine whether substance abuse is material to disability. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If the remaining limitations without DAA would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling without DAA, then the claimant's substance abuse is material and benefits must be denied. *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007).

Plaintiff bears the burden of proving that DAA is not a contributing factor material to his disability. *Id.* To do so, plaintiff must establish that his disability continues to be severe even in periods of sobriety. *Id.* If plaintiff cannot establish that his DAA is not material, then the ALJ must repeat the five-step sequential evaluation process for determining whether plaintiff is disabled, absent the limiting effects of DAA. *Id.*

As required under the regulations, after finding plaintiff disabled when alcohol abuse was considered, the ALJ then considered whether plaintiff would be disabled absent the alcohol abuse. (AR 22-26.) As part of this evaluation, the ALJ considered the June 2008 report of examining psychologist Linda Jansen, Ph.D., the June 2009 through January 2010 medical records from treating psychologist W. Allen Hume, Ph.D., and the 2008 opinions of state agency psychologists Edward Beaty, Ph.D., and Mary A. Gentile, Ph.D. (AR 24-25.) The ALJ found this medical evidence supported his conclusion that plaintiff had normal cognitive abilities when he was abstinent from alcohol and, therefore, would not be disabled if he stopped

using alcohol. (AR 24-26.)

Plaintiff argues that the ALJ's conclusion is not supported by substantial evidence and is based on the ALJ's legal errors in failing to properly evaluate the medical evidence and his testimony. (Dkt. No. 17 at 14-19, Dkt. No. 19 at 2.) He avers that it was impossible to separate the degree of restriction resulting from his alcohol abuse from his other mental impairments prior to January 2010 because he had no periods of abstinence prior to that time. To support his claim, plaintiff relies on a 1996 internal agency document, Emergency Teletype No. EM-96200, which states in part: "[w]hen it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." Emergency Teletype No. EM-96200, http://policy.ssa.gov.

The Ninth Circuit, however, rejected a related internal agency document in *Parra*, which stated, in part, "'where the MC/PC [medical consultant/psychological consultant] cannot project what limitations would remain if the individuals stopped using drugs/alcohol,' the MC/PC 'should record his/her findings to that effect' and 'the DE will find that DAA is not a contributing material factor to the determination of disability.'" *Parra*, 481 F.3d at 749, n. 5 (quoting Emergency Teletype No. EM-96-94). The Ninth Circuit reasoned that internal agency documents such as these do not carry the force of law, are not binding on the agency, and do no create judicially enforceable duties. *Id* at 749. In addition, the Court found the agency interpretation contradicted the purpose of the Contract with America Advancement Act ("CAAA") which was "'to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy.'" *Id*. at 749-50 (quoting *Ball v. Massanari*, 254 F.3d

REPORT AND RECOMMENDATION
PAGE - 6

817, 824 (9th Cir. 2001)). The Court further reasoned,

> An alcoholic claimant who presents inconclusive evidence of materiality has no incentive to stop drinking, because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated. His claim would be guaranteed only as long as his substance abuse continues – a scheme that effectively subsidizes substance abuse in contravention of the statute's purpose.

*Id*. at 750. The Ninth Circuit concluded that insufficient evidence as to the issue of materiality is insufficient to satisfy the plaintiff's burden of proving his alcoholism was not a material factor. *Id*. Thus, contrary to plaintiff's contention, internal agency documents, such as Emergency Teletype EM-96200, do not create judicially enforceable duties and the Court does not review allegations of noncompliance with their provisions. *See Parra*, 481 F.3d at 749.

Nevertheless, the Court agrees with plaintiff that the ALJ's conclusion that plaintiff would not be disabled if he stopped using alcohol is not supported by substantial evidence. To the contrary, none of the medical evidence identified by the ALJ sufficiently addressed whether plaintiff would remain disabled if he stopped drinking.

First, the ALJ highlighted the June 18, 2008, Psychological – Memory Assessment of consultative examiner Linda Jansen, Ph.D. (AR 24, 348-51.) The ALJ stated,

> Linda Jansen, PhD, noted that given the claimant's relatively stable history of employment prior to the onset of his latest symptoms, it appeared that his current level of memory functioning was impaired from his previous functioning. The claimant reported drinking six or eight beers a night at this evaluation. The evidence suggests that his decreased functioning is associated with his alcohol use. Dr. Jansen's opinion regarding the claimant's functioning is associated with his alcohol use. Dr. Jansen's opinion regarding the claimant's functioning as discussed above, is thus given little weight when assessing his functioning without alcohol abuse. The claimant's previous ability to maintain employment with psychiatric impairments suggests that he would be able to do so if he discontinued alcohol abuse.

(AR 24.) While the ALJ accepted Dr. Jansen's findings as supportive of his decision, he

01 rejected her opinion regarding plaintiff's functioning without alcohol abuse, finding "the
02 evidence suggests that his decreased functioning is associated with his alcohol use." *Id.*
03 Regardless of whether the ALJ's statements accurately reflect Dr. Jansen's findings, nothing in
04 her report indicates that plaintiff's decreased functioning was associated with his alcohol abuse.
05 While the record indicates that plaintiff maintained gainful employment until November 1,
06 2007, the record also indicates that plaintiff admitted to drinking heavily for more than fifteen
07 years. (AR 214, 217, 378, 435, 461.) Based on her findings, Dr. Jansen diagnosed plaintiff
08 with panic disorder, obsessive-compulsive disorder, major depressive disorder, and alcohol
09 abuse. (AR 351.) Her global assessment of functioning ("GAF") score was 40.[2] Nowhere
10 in Dr. Jansen's findings did she indicate expressly or implicitly that plaintiff's recent decreased
11 functioning was associated with his alcohol abuse. Because Dr. Jansen did not make this
12 finding, the ALJ's seeming reliance on her report for this conclusion was unjustified. The
13 ALJ's presumption that plaintiff would be able to maintain employment if he discontinued his
14 alcohol abuse is suspect at best.

15 Next the ALJ turned to the medical records from plaintiff's treating psychologist W.
16 Allen Hume, dated June 2009 through January 2010. (AR 395-422, 212-13, 434-57.) On
17 June 23, 2009, Dr. Hume diagnosed plaintiff with bipolar disorder, panic disorder, alcohol

---

2 The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000). A GAF score of 31-40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.*

dependence, and nicotine dependence. (AR 396, 421.) His GAF score was 51, indicating "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." (AR 396.) The ALJ highlighted an October 2009 progress report of their sessions which noted that plaintiff "reported continued drinking and psychological symptoms," and stated that plaintiff was "clearly suffering from a co-occurring mood/anxiety disorder and alcohol dependence." (AR 24, 401.) Dr. Hume reported that plaintiff "continues to exhibit symptoms of bipolar disorder along with panic attacks, depression and generalized anxiety." (AR 401.) Dr. Hume noted, "I am concerned that his alcohol usage is worsening and perhaps causing many of his symptoms." (AR 24, 401.) The ALJ gave this opinion "significant weight," finding it "consistent with other objective medical evidence which demonstrates the claimant's impairments will improve when he stops abusing alcohol." (AR 24.) The ALJ did not identify what objective medical evidence he was referring to.

On January 28, 2010, Dr. Hume prepared a letter indicating that plaintiff had been sober for eight days. (AR 24, 422.) The letter stated,

> I am writing this letter on behalf of Mr. Steven Todd Laffoon, a psychotherapy client with whom I have counseled since 6/23/09 for a myriad of co-occurring disorders. Mr. Laffoon has a very long-standing history of psychiatric illness that records indicate began prior to 1991, including panic, anxiety/OCD, and depressive disorders. In addition he developed a significant alcohol problem, which was initially attributed to attempts at self-medication of psychiatric symptoms approximately 15 years ago. On 1/14/10, he reportedly weaned himself of alcohol and proudly reported one day sober, with a plan to remain alcohol free. As of today, 1/28/10, he has been sober for 8 days. We discussed ways in which to accomplish sustained sobriety, including entering into a recovery program such as intensive outpatient therapy, which he plans to do, and AA. He will need significant sober, social support in order to remain alcohol free. In addition, sobriety will allow him a better opportunity to further address his long standing

psychiatric issues, particularly the panic and depressive symptoms he has suffered most of his life.

At this time, it is my professional opinion that Mr. Laffoon is unable to secure and maintain any form of gainful employment due to his psychiatric illness. If he remains sober he will have an improved chance of addressing psychiatric symptoms in the future.

(AR 422.) The ALJ gave Dr. Hume's opinion that plaintiff was unable to secure and maintain gainful employment due to his psychiatric illnesses "no weight," stating that "the evidence demonstrates that with abstinence from alcohol use, his functioning will improve." (AR 25.) Again, the ALJ did not identify what evidence he was referring to. While the ALJ rejected this opinion, the ALJ accepted Dr. Hume's opinion contained in the same letter that "if plaintiff remained sober, he believed he would have an improved chance of addressing his psychiatric symptoms." (AR 25.)

A treating physician's opinion is generally due "controlling weight," 20 C.F.R. § 404.1527(d)(2), and can only be rejected if the ALJ provides "clear and convincing" reasons if that opinion is not contradicted by other evidence, and "specific and legitimate" reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Here, the ALJ stated that the treating physician's opinions were inconsistent with the other objective medical evidence. (AR 25.) The ALJ did not identify the objective medical evidence to which he was referring, however. "[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion." *Regennitter v. Comm'r of Soc. Sec.*, 166 F.3d 1294, 1299 (9th Cir. 1999). Moreover, the ALJ's reliance on portions of Dr. Hume's letter purportedly supporting his disability determination, while rejecting those portions that did not, runs afoul of the general rule that an ALJ is not entitled to pick and choose through a physician's opinion. *See, e.g.*, *Robinson v. Barnhart,* 366 F.3d

1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); *Switzer v. Heckler,* 742 F.2d 382, 385-86 (7th Cir.1984) ("[T]he Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper."). The Commissioner, in his brief, attempts to justify the ALJ's rejection of Dr. Hume's opinions; however, such a recitation is purely conjecture upon the part of counsel and cannot serve as the basis for review by a court. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (counsel's *post hoc* rationalizations are not substituted for the reasons supplied by the ALJ).

The ALJ also relied on the opinions of the state agency medical consultants, Edward Beaty, Ph.D., and Mary A. Gentile, Ph.D., who opined that plaintiff had normal cognitive abilities when he abstained from alcohol. (AR 25, 360-62, 365.) However, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester v. Chater,* 81 F.3d 821, 831 (9th Cir. 1996). Accordingly, the ALJ erred in rejecting Dr. Jansen's and Dr. Hume's opinions in favor of the non-examining, consulting psychologists' opinions absent a legally sufficient explanation for doing so. Because the ALJ's decision is not supported by substantial evidence, remand is warranted.

Plaintiff also points to evidence submitted to the Appeals Council after the ALJ's April 2010 decision, including progress notes and an opinion letter from Dr. Hume, a toxicology report, and a neuropsychological evaluation performed by Edwin L. Hill, Ph.D. (AR 434-70.) He argues that the Appeals Council erred by failing to remand his claim for a new hearing in light of this new evidence which showed that his anxiety and depression continued to cause

marked limitations more than four months after he stopped using alcohol. (Dkt. No. 17 at 16.)

On May 27, 2010, Dr. Hume prepared a letter stating, in part, as follows:

> Mr. Laffoon has a very long-standing history of psychiatric illnesses that records indicate began prior to 1991, including panic attacks, anxiety/OCD, and depressive disorders. In addition, he developed a significant alcohol problem which began at age 25, many years after the development of impairing psychiatric syndromes. . . . On 1/15/10, he reportedly weaned himself off alcohol, entered an intensive outpatient chemical dependency program which he is about to finish, and reported that he has remained sober for more than 4 months. He attends at least 2 AA meetings per week at this time in addition to required groups in his alcohol treatment program. In order to support his ongoing recovery, we have begun to meet two times per week, which we plan to do for the foreseeable future, with the goals of relapse prevention, addressing his ongoing depression and anxiety/panic symptoms, the latter panic which has resulted in him having difficulties leaving his home, driving more than a mile from home, and refraining from going places where there are many people (i.e., grocery store, Home Depot, etc.)
>
> Since obtaining sobriety, he has exhibited an increase in anxiety and panic symptoms, for which he is attempting to manage with both medications and non-pharmalogical interventions (AA, self talk, and family support). Objective personality assessment (Millon Clinical Multiaxial Inventory – III) verifies that he is experiencing a significant mental disorder (recurrent severe mood disorder). He has also complained more about cognitive dysfunction, including difficulty with memory, attention/concentration, following through on needed tasks, and other executive functioning.
> . . .
> At this time, it is my continued professional opinion that Mr. Laffoon is unable to secure and maintain any form of gainful employment due to his current psychiatric illnesses. He has been sober for 4 plus months, but continues to exhibit significantly debilitating symptoms, including cognitive complaints.

(AR 435-36.)

In June 2010, Dr. Hill conducted a comprehensive neuropsychological evaluation of the plaintiff. (AR 459-68.) He found "significant evidence of considerable impairment in plaintiff's executive functioning capabilities, attention and concentration skills, memory and learning abilities, and speed of information processing." (AR 468.) Dr. Hill opined,

> Despite nearly five months of sobriety and abstinence from all alcohol use, he is having difficulties maintaining attention and concentration, maintaining pace and persistence, understanding and retaining new information, adapting to change in his environment, and communicating effectively and appropriately with other people. While he has longstanding problems with anxiety, panic, depression, and irritability that do not appear to be under optimal control, the decline in his cognitive functioning is of great concern. While the emotional problems he has could be exacerbating his cognitive problems, he may have some underlying neurological disease associated with some kind of dementia. Further neurological examination appears warranted. The prognosis for improvement in his condition appears poor given that he continues to evidence problems in his cognitive abilities during the past 2 years without sign of significant improvement. He needs further psychiatric and psychological care including medication management, but does not appear to be capable of maintaining gainful employment in the competitive marketplace at the present time.

*Id*.

The Commissioner argues that the Court may remand the case for the ALJ to consider evidence first submitted to the Appeals Council only upon a showing the plaintiff had good cause not to submit the evidence to the ALJ. (Dkt. No. 18 at 10.) The Commissioner relies on cases relating to "sentence six" of 42 U.S.C. § 405(g), which states that "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner . . ., but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id*.

However, as this Court has previously indicated, Ninth Circuit precedent strongly supports the proposition that evidence submitted to the Appeals Council becomes part of the administrative record for the purposes of review; *see Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (additional evidence submitted to the Appeals Council may be considered because the Appeals Council addressed them in the context of denying plaintiff's request for

review); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (evidence submitted to the Appeals Council is part of the record on review to federal court); *Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (holding that a reviewing court should consider both the ALJ's decision and any additional material submitted to the Appeals Council); and that a plaintiff need not show such evidence is material and that there is good cause for the failure to incorporate it into the record previously. Instead, such evidence is reviewed pursuant to "sentence four" of 42 U.S.C. § 405(g) which provides that a "Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *See Ramel v. Barnhart*, No. C05-1913-RSL-MAT, slip op. at 11-14 (W.D. Wash. Aug. 4, 2006) (Dkt. No. 18). The Commissioner cites no authority for the proposition that materiality or good cause is required for a district court to consider evidence within the record. Consequently, this Court may remand for consideration of the additional evidence submitted to the Appeals Council without a showing of materiality or good cause.

In sum, the Court concludes that the ALJ failed to properly determine what limitations would remain if plaintiff abstained from alcohol abuse. Furthermore, evidence developed after the ALJ's decision suggests that significant mental limitations may exist independently of his alcohol abuse. In light of this new evidence and the Court's conclusion that the ALJ failed to properly determine whether plaintiff's limitations would remain if he stopped abusing alcohol, remand for further administrative proceedings is appropriate. On remand, the ALJ should reevaluate the medical evidence, along with any updated medical evidence plaintiff may submit, in considering what limitations, if any, plaintiff would continue to experience if his

alcohol abuse ceased. If warranted, the ALJ should obtain testimony from a medical expert as to the effect on plaintiff's claimed mental impairments if he were to abstain from alcohol abuse.

B. Credibility

Plaintiff alleges that the ALJ erred by failing to provide any clear and convincing evidence for rejecting his testimony. Dkt. No. 17 at 20. Plaintiff also contends that the ALJ failed to adequately explain why he was credible in describing his symptoms while he was using alcohol but not credible when describing his symptoms when he was sober. *Id*.

A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. § 404.1529; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. *Id*. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.3d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Id*. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third

parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Id*.

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the residual functional capacity assessment."  (AR at 24.)

Because this case is being remanded for reconsideration of the medical evidence, and the Court has found that credibility determinations are inescapably linked to conclusions regarding medical evidence, 20 C.F.R. § 404.1529, the ALJ's credibility finding is also reversed and the issue remanded.  After re-evaluating the medical evidence of record, the ALJ will be in a better position to evaluate plaintiff's credibility.  On remand, the ALJ should properly assess plaintiff's testimony, and provide clear and convincing reasons for rejecting it should such a conclusion be warranted.

C.  RFC Assessment

As discussed above, the ALJ erred in his treatment of the medical evidence requiring remand.  Accordingly, on remand, after properly evaluating the medical evidence, the ALJ will reevaluate plaintiff's RFC.  If the ALJ's RFC assessment is revised, the ALJ will also call a vocational expert ("VE") to testify about jobs that may exist with a properly framed hypothetical that incorporates all of plaintiff's limitations.

//

//

//

//

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this <u>18th</u> day of August, 2011.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 17